UNITED STATES v. ATCHISON, T. & S. F. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.   August 22, 1908.)

No. 2,566.

RAILROADS—SAFETY APPLIANCE ACT—CAR COUPLINGS—DUTY IMPOSED IS AB-
SOLUTE.

The safety appliance law of Congress, in the situations in which it is
applicable, imposes upon a railway company an absolute duty to main-
tain the prescribed coupling appliances in operative condition, and is not
satisfied by the exercise of reasonable care to that end.   St. Louis, Iron
Mountain & Southern Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616.

[Ed. Note.—Duty of railroad companies to furnish safe appliances, see
note to Felton v. Bullard, 37 C. C. A. 8.]

(Syllabus by the Court.)

In Error to the District Court of the United States for the District
of Colorado.

For opinion of the court below, see 150 Fed. 442.

Ralph Hartzell, Asst. U. S. Atty., and Luther M. Walter, Special
Asst. U. S. Atty. (Earl M. Cranston, U. S. Atty., on the brief).

Henry T. Rogers (Pierpont Fuller, on the brief), for defendant in
error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and
PHILLIPS, District Judge.

VAN DEVANTER, Circuit Judge.   This writ of error challenges
a judgment for the defendant in a civil action to recover a penalty for
an alleged violation of the safety appliance law of Congress embodied
in Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p.
3174), Act April 1, 1896, c. 87, 29 Stat. 85, and Act March 2, 1903,
c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885).   Stripped
of matters about which there is no controversy here, the violation
charged consisted in hauling a car, in the usual course of transporta-
tion, when one of the couplers thereon was broken and inoperative,
so that it could not be coupled or uncoupled without the necessity of
a man going between the ends of the cars.   The trial was to a jury,
and the single question presented to us is whether or not the duty of
the defendant, in respect of the maintenance of the coupler in an
operative condition, was correctly stated in the portion of the court's
charge, which reads:

"The act, however, must necessarily have a reasonable construction.   These
couplings will get out of repair, and it takes time to repair them.   It takes
time to discover whether or not they are out of repair.   It is the duty of the
railway companies to use prudence and the ordinary diligence of a business
man, keeping in view the purposes of the act, to keep these couplings in re-
pair.   * * *   And it is for you to determine in this case whether or not the
defendant used reasonable care in ascertaining whether the car was in good
repair, and then, again, whether the defendant used reasonable care in putting
the coupler in good repair, after it ascertained that it was out of repair.   If
you find that it did use reasonable care in both instances, then it is not liable,
and you should return a verdict in favor of the defendant; otherwise, you
should find for the United States."

Applying to the evidence the law as so interpreted, the jury returned a verdict for the defendant, which the court declined to disturb upon a motion for a new trial. United States v. Atchison, etc., Ry. Co. (D. C.) 150 Fed. 442. That the interpretation of this law of Congress has been attended with difficulty is attested by many varying opinions in the reported cases, and that there are considerations tending to sustain the construction placed upon it by the District Court is attested by the opinion rendered upon the motion for a new trial and by the sustaining opinions in others cases, notably St. Louis & S. F. Ry. Co. v. Delk (C. C. A.) 158 Fed. 931; but, as we read the opinion of the Supreme Court in the more recent case of St. Louis, Iron Mountain & Southern Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061 (s. c. 71 Ark. 445, 78 S. W. 220; 83 Ark. 591, 98 S. W. 959), it is now authoritatively settled that the duty of the railway company in situations where the congressional law is applicable is not that of exercising reasonable care in maintaining the prescribed safety appliance in operative condition, but is absolute. In that case the common-law rules in respect of the exercise of reasonable care by the master and of the nonliability of the master for the negligence of a fellow servant were invoked by the railway company, and were held by the court to be superseded by the statute; it being said in that connection (page 294 of 210 U. S., page 620 of 28 Sup. Ct. [52 L. Ed. 1061]):

"In deciding the questions thus raised, upon which the courts have differed (St. Louis & S. F. Ry. v. Delk [C. C. A.] 158 Fed. 931), we need not enter into the wilderness of cases upon the common-law duty of the employer to use reasonable care to furnish his employé reasonably safe tools, machinery, and appliances, or consider when or how far that duty may be performed by delegating it to suitable persons for whose default the employer is not responsible. In the case before us the liability of the defendant does not grow out of the common-law duty of master to servant. The Congress, not satisfied with the common-law duty and its resulting liability, has prescribed and defined the duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is prescribed. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the Legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just."

While the defective appliance in that case was a drawbar, and not a coupler, and the action was one to recover damages for the death of an employé, and not a penalty, we perceive nothing in these differences which distinguishes that case from this. As respects the nature of the duty placed upon the railway company, section 5, relating to drawbars, is the same as section 2, relating to couplers, and section 6, relating to the penalty, is expressed in terms which embrace every violation of any provision of the preceding sections. Indeed, a survey of the entire statute leaves no room to doubt that all violations thereof are put in the same category, and that whatever properly would be deemed a violation in an action to recover for personal injuries is to be deemed equally a violation in an action to recover a penalty.

Because, in view of the later decision in the Taylor Case, the instruction before quoted did not embody a correct statement of the law, the judgment is reversed with a direction to grant a new trial.